728 So.2d 1254 (1999)
LOUISIANA DEPARTMENT OF AGRICULTURE AND FORESTRY
v.
Herbert SUMRALL, Director of Civil Service; The Department of Civil Service; The State Civil Service Commission; Richard Ieyoub, Attorney General of Louisiana; Earl Kolb, and Carolyn Dance.
No. 98-C-1587.
Supreme Court of Louisiana.
March 2, 1999.
Rehearing Denied April 1, 1999.
*1256 C. James Gelpi, David S. McFadden, New Orleans, for Applicant.
Robert R. Boland, Jr., Baton Rouge, Richard P. Ieyoub, Attorney General, Joseph M. Clark, Sr., Shreveport, Carolyn Dance, for Respondent.
KIMBALL, J.[*]
We granted certiorari in this case to review the court of appeal decision holding that the rules promulgated by the Civil Service Commission which afford a classified employee the right to an administrative appeal to the Commission on claims of discrimination, on grounds other than the four specifically listed in Louisiana Constitution Article X, Section 8(B), are a constitutional exercise of the Commission's rulemaking authority under Article X, Section 10 of the Louisiana Constitution of 1974. Because we hold that the Commission's rules are unconstitutional, we reverse the lower court decisions.

Background and Procedural History
Article X of the Louisiana Constitution of 1974 establishes the State Civil Service and governs the State Civil Service Commission ("the Commission"). The portions of Article X at issue in the instant case are those sections dealing with the Commission's quasi-judicial powers and those regarding the rulemaking powers of the Commission. Article X, § 10 delineates the Commission's rulemaking and investigatory powers. Section 12 of Article X places exclusive original jurisdiction to adjudicate removal and disciplinary cases in the Commission, with the attendant power to appoint referees to hear and decide cases. Further, that Section allows the classified employee the right to an administrative *1257 appeal from the Commission-appointed referee's decision to the Commission itself, with the right to judicial review in the circuit courts of appeal. Section 8 of Article X prohibits disciplinary action against classified employees, except for cause, prohibits discrimination against a classified employee, grants to employees the right to bring an appeal concerning such actions to the Commission, and sets out the burden of proof for each type of action.
After the passage of these provisions in the new constitution of 1974, the Commission promulgated the rules at issue in this case which define "discrimination" in broader terms than Article X, Section 8(B) and which provide for administrative appeals to the Commission for classified employees who bring discrimination claims under the rules.
The Louisiana Department of Agriculture and Forestry ("Forestry") filed suit in the Nineteenth Judicial District Court seeking a judicial declaration that the Commission rules are unconstitutional because they exceed the constitutional limits set forth in Article X. Forestry argues that Article X, Section 8(B) sets forth in clear and unambiguous terms the rights of a classified employee with regard to discrimination claims. Section 8(B) in pertinent part provides:
(B) Discrimination. No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part....
This Section, Forestry argues, creates four explicit types of prohibited discrimination on the bases of: (1) political beliefs; (2) religious beliefs; (3)sex; and (4) race. In the second sentence of that Section the delegates limited the right to administrative appeal to those four types of discrimination claims when they wrote: "A classified employee so discriminated against shall have the right of appeal to the appropriate commission...." La. Const. Article X, § 8(B) (emphasis added). Forestry contends the phrase "so discriminated against" clearly refers to the list in the first sentence that only prohibits discrimination on the basis of political or religious beliefs, sex, or race. Based on this analysis, Forestry asserts that the Commission may constitutionally exercise its appellate jurisdiction only when a classified employee brings a discrimination claim based upon one of the four enumerated categories from Section 8(B). Thus, to the extent that the rules enacted by the Commission purport to authorize administrative appeals to the Commission on discrimination claims other than those based on political or religious beliefs, sex or race, they are unconstitutional.
On cross motions for summary judgment, the trial court ruled against Forestry in reliance on the first circuit case, Department of Health & Human Resources v. Payton, 498 So.2d 181 (La.App. 1 Cir.1986). The trial court stated that it was bound to follow the first circuit in rejecting the argument that only those forms of discrimination specifically enumerated in Article X, Section 8(B) can provide the constitutional authority for an appeal to the Civil Service Commission.[1] The trial court reasoned that since the Commission is authorized to entertain these "types" of appeals, i.e. appeals on claims of discrimination, it is empowered to pass rules and regulations in furtherance of that power.
The first circuit agreed, stating:
Absent any evidence to the contrary in the convention transcripts, we do not view section 8(B) as a limit on the appellate jurisdiction of the Commission. Nor, is the listing of the types of discrimination proscribed against exclusive. In particular, Article 10, Section 10(A)(3) proscribes *1258 against `favor or discriminat[ion] against any applicant or employee because of his membership or non-membership in any private organization.' ... Under the "broad and general" rule-making power, the Civil Service Commission possesses the authority to expand on the types of discrimination which are prohibited and grant appeal therefrom.
Louisiana Dept. of Agriculture and Forestry v. Sumrall, 97-0288, p. 5 (La.App. 1 Cir. 5/15/98), 712 So.2d 678, 680.
The court of appeal reasoned that Section 8(B) could not contain an exclusive list because "then an individual would have no recourse to the Commission for discrimination proscribed by Section 10(A)(3)." Louisiana Dept. of Agriculture and Forestry v. Sumrall, 97-0288 at p. 5, 712 So.2d at 680. Furthermore, since the Commission has "exclusive jurisdiction over classified employer/employee disputes that are employment related," the district courts would be "precluded from entertaining the Article 10 discrimination claims, and the employee would have no recourse." Louisiana Dept. of Agriculture and Forestry v. Sumrall, 97-0288 at p. 5, 712 So.2d at 680.
Forestry assigns several errors on appeal to this Court. First, that the court of appeal erred in its holding that Section 8(B) is not a limit on the appellate jurisdiction of the Commission; second, that the court of appeal erred in reasoning that due to a perceived lack of other resources for classified employees, the plain language of Section 8(B) could be disregarded; and third, that the court of appeal erred in holding that the Commission's rulemaking powers authorize the Commission to expand by rule the types of discrimination which are prohibited in Article X, Section 8(B), and grant administrative appeals therefrom.
The instant case requires us to interpret Article X, Section 8(B), Section 12(A), and Section 10(A)(1) and (3) to determine whether the rules of the Commission challenged herein are constitutional.

Article X, Section 8(B)
We have established that articles of the constitution are to be interpreted using the same canons of interpretation applicable to statutes. "Constitutional provisions are to be construed and interpreted by the same rules as are other laws." Aguillard v. Treen, 440 So.2d 704, 707 (La.1983) (citing Barnett v. Develle, 289 So.2d 129 (La.1974); Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958)); see also State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 486 (1949) ("Constitutional provisions are subject to the same rule of interpretation and construction as are applicable to other laws."(citing Orleans Parish School Board v. Murphy, 156 La. 925, 101 So. 268; 11 American Jurisprudence 658, Constitutional Law, Section 49; 16 C.J.S. Constitutional Law, § 15, page 51.)). Thus, "when a constitutional provision is plain and unambiguous, its language must be given effect." Id. This principle, most basic to civilian methodology, has been in our Civil Code since 1870: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9; Cat's Meow, Inc. v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186. Therefore when interpreting a constitutional provision, the "starting point" is with the language of the provision. Id.(citing Touchard v. Williams, 617 So.2d 885 (La.1993)). Article X, Section 8(B) provides:

Section 8. Appeals
(B) Discrimination. No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the employee.
Reading Section 8(B), by giving the straightforward language its ordinary meaning, it is clear that the provision prohibits only four categories of discrimination: those based on political or religious beliefs, sex or race. The provision then limits the Commission's appellate jurisdiction only to those cases brought by classified employees asserting *1259 that they were "so discriminated against." There is no ambiguity in this provision for the meaning is easily ascertained from the language employed. Section 8(B) prohibits discrimination against a classified employee on the basis of his political or religious beliefs, sex, or race. Any classified employee who alleges that he has been discriminated against in one of these four ways has a right to an administrative appeal to the Commission. No other meaning could be ascertained from the plain text of the article. Because we find the language of this provision clear we must not search any further for the intent of those who drafted the provision. La.C.C. art. 9. Additionally, the application of this provision as written does not lead to absurd consequences. We must be cognizant of the principle that state constitutional provisions do not grant power; rather, the provisions are limitations upon power otherwise plenary and held by the people. Meredith v. leyoub, 96-1110, p. 6 (La.9/9/97), 700 So.2d 478, 481.
The Louisiana Constitution's provisions, unlike those of the Federal Constitution, are not grants of power but are instead limitations on the otherwise plenary power of the people of this state as exercised through the state legislature. It is a fundamental principle of judicial interpretation of state constitutional law that the legislature is supreme except when specifically restricted by the Constitution.
Guillory v. Department of Transp. and Development, Div. of Maintenance and Field Operations, 450 So.2d 1305, 1308 (La.1984)(citing Hainkel v. Henry, 313 So.2d 577 (La.1975); Central Louisiana Telephone Co. v. Louisiana Public Service Commission, 262 La. 819, 264 So.2d 905 (1972); Womack v. Louisiana Commission on Governmental Ethics, 250 La. 833, 199 So.2d 891 (1967); Plebst v. Barnwell Drilling Company, 243 La. 874, 148 So.2d 584 (1963)).
No absurd consequences follow from a straightforward application of Section 8(B) as written. The provision serves as a limit upon the Commission's quasi-judicial power to hear discrimination claims, with the result that only four types of discrimination claims may be entertained by the Commission.

Article X, Section 12
Section 12 of Article X places exclusive original jurisdiction to adjudicate removal and disciplinary cases in the Commission, with the attendant power to appoint referees to hear and decide cases. Further, that Section grants the classified employee the right to an administrative appeal from the Commission-appointed referee's decision to the Commission itself, with the right to judicial review in the circuit courts of appeal. That Section provides in pertinent part:
The State Civil Service Commission shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, with subpoena power and power to administer oaths. It may appoint a referee, with subpoena power and power to administer oaths, to take testimony, hear, and decide removal and disciplinary cases. The decision of a referee is subject to review by the commission on any question of law or fact upon the filing of an application for review with the commission.... The final decision of the commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located....
This Section establishes that the Commission has exclusive original jurisdiction over all removal and disciplinary cases. The Section is silent on discrimination cases. Thus, Sections 8 and 12 must be read together in order to assess the Commission's quasi-judicial authority. Constitutional provisions should be read together so that each provision is given their proper force and effect. We have said the "cardinal rule of constitutional and statutory construction" is that "such enactments should be construed, where possible, so as to give force and effect to each provision and to render none nugatory." Central Louisiana Elec. Co. v. Louisiana Public Service Commission, 251 La. 532, 205 So.2d 389, 391 (1967) (emphasis added) (citing Decklar v. Frankenberger, 30 La.Ann. 410; Meyers v. Flournoy, 209 La. 812, 25 So.2d 601; 66 American Jurisprudence 2d 242, verbo Constitutional Law, Sections 66-67; and 16 C.J.S. verbo Constitutional Law ss 22-23, p. 91).

Section 8. Appeals.

*1260 (A) Disciplinary Actions. No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority.
(B) Discrimination. No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the employee.
Reading the entirety of Section 8 together with Section 12, we see the extent of the quasi-judicial power placed with the Commission by the constitution. The constitution limits the Commission's jurisdiction to two categories of claims: (1) discrimination claims provided for in Section 8(B); and (2) removal or disciplinary claims provided for in Sections 12(A) & 8(A).

The Constitutionality of the Commission's Rules
The rules at issue in this case are Rule 14.1, which prohibits discrimination, Rule 1.14.1, which defines discrimination, and certain subsections of Rule 13.10, which allows certain claims to be appealed to the Commission.
Rule 13.10 Appeals to the Commission.
An appeal may be made to this Commission by....
(a) Any person in the Classified Service who alleges that he has been discriminated against or subjected to any disciplinary action because of his political or religious beliefs, sex, or race.
* * *
(c) Except as is provided in Rule 10.14, any person in the Classified Service who alleges that he has been adversely affected by the violation of the Article or any Rule of this Commission.
* * *
(e) Any person in the Classified Service who alleges that he has been discriminated against by the application of the Pay Plan or by the application of any change thereof.
(f) Any person who shall have applied for or been examined for the Classified Service, without having acquired permanent status therein, and who alleges discrimination in the review of his application, admission to an examination, scoring of examinations, the establishment of an eligible list or certification therefrom, or in the Director's decision under Rule 7.5(d).
* * *
(h) Any person who alleges that he has been the subject of discrimination as defined in Rule 1.14.1.
* * *
(l) Any applicant for employment in the Classified Service and any employee in the Classified Service who alleges that he has been discriminated against because of his membership or nonmembership in any private organization.
Rule 1.14.1 "Discrimination" means consideration of religious or political beliefs, sex, race, or any other non-merit factors.
14.1 Prohibited Activities.
(a) No person shall be appointed or promoted to, or demoted, or dismissed from any position in the Classified Service, or in any way favored or discriminated against with respect to employment in the Classified Service, because of his or her political or religious opinions or affiliations, race, sex, or membership or non-membership in any private organization.
Forestry complains that the above rules are unconstitutional because they conflict with the express limits in the constitution and because the Commission acted ultra vires in using its limited rulemaking authority to enact the rules which effectively expand its limited constitutional jurisdiction. We *1261 have established that the constitution limits the Commission's quasi-judicial power to two categories of claims: (1) specific discrimination claims provided for in Section 8(B); and (2) removal or disciplinary claims provided for in Sections 12(A) and 8(A). Therefore, unless, as the Commission argues, Section 10 authorizes the Commission to use its rulemaking power to enact the rules in question, we must find the rules unconstitutional.
The Commission contends that the proper standard under which to judge its rules is whether the rules are reasonable and do not violate basic constitutional rights. Hence, it asserts the rules being challenged which grant the right to be free from discrimination and which grant the right to appeal such claims to the Commission are both reasonable and well within their power under Section 10. We disagree. When examining the constitutionality of rules enacted by the Commission, our jurisprudence has established a two-part test.
In evaluating the constitutionality of Commission rules, this Court has applied the two-part analysis developed in New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, 422 So.2d 402, 411 (La.1982) ("Firefighters I") and New Orleans Firefighters Ass'n. Local 632, AFL-CIO v. City of New Orleans, 590 So.2d 1172 (La.1991)("Firefighters II"), and reaffirmed by this Court in Police Ass'n. Of New Orleans v. City of New Orleans, 94-1078, p. 8 (La.1/17/95), 649 So.2d 951, 959. In the Firefighters II case, we described the authority granted to state and city commissions under Article X, Section 10(A)(1) as the "exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1)." New Orleans Firefighters Ass'n. Local 632, AFL-CIO v. City of New Orleans, 590 So.2d at 1176 (emphasis added). Thus, our initial inquiry when evaluating the Commission's authority to enact a rule is whether the rule in question falls within an area specifically enumerated in Article X, Section 10(A)(1).
"However, in areas of power affecting public employees which are not enumerated in Section 10(A)(1), a commission's powers should not be expanded beyond those necessary to effectuate the objectives and purposes of the civil service." New Orleans Firefighters Ass'n. Local 632, AFL-CIO v. City of New Orleans, 590 So.2d at 1176 (citing New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, 422 So.2d 402, 411 (La.1982))(emphasis added). Thus, if the Commission has adopted a rule in an area not specifically enumerated in Section 10(A)(1), a court must ask whether it is "necessary for the commission to have the power to enact the rules in question to effectuate the objectives and purposes of the civil service." Id.
Therefore, to test the constitutionality of these rules we must first look to the constitutional provision which sets forth the Commission's rulemaking powers. Article X, Section 10 in pertinent part reads:
Section 10. (A) Rules. (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. It may make recommendations with respect to employee training and safety.
The Commission argues that the rules in question "are intimately and directly related to the administration and regulation of the classified service." See Brief of Civil Service Respondent, p. 1. Arguably, rules protecting employees from discriminatory conduct would be beneficial to a Civil Service System based on merit. However, our cases make it clear that the Commission's authority to enact rules, though it be broad and general, is nonetheless limited by the terms expressed in the constitution itself.
*1262 Rule 13.10 subsection (c) coupled with Rule 14.1, subsections (e), (f), and (l), and subsection (h) coupled with Rule 1.14.1 ("the rules"), purport to create the right to an appeal to the Commission on claims distinct from those listed in Article X, Sections 8 and 12(A). Section 10, quoted above, does not include in its extensive list the authority to enact rules to expand the Commission's own jurisdiction to hear appeals. Noticeably absent from this version of the article are the words, "other matters pertaining to appeals." These words were included in the vast listing in the prior Civil Service article of the 1921 constitution. La. Const. Art. XIV, Section 15 (1921). The end result of the constitutional debates over the Civil Service Article, which were very extensive, is current Section 10 which plainly does not include appellate matters in the list of those areas within which the Commission enjoys exclusive rulemaking authority.
In the Firefighters II case we extensively reviewed Section 10(A)(1) and at length interpreted "employment," "promotion," "demotion," "suspension," "reduction in pay," "removal," "certification," "qualifications," "political activities," "employment conditions," and "compensation and disbursements to employees." New Orleans Firefighters Ass'n. Local 632, AFL-CIO v. City of New Orleans, 590 So.2d at 1176. We have again examined Section 10(A)(1)'s scope and our interpretations from Firefighters II and find no support for the Commission's authority to enact rules expanding its appellate jurisdiction to claims beyond that which the constitution has already bestowed. The only remaining area enumerated in Section 10(A)(1) which we did not closely examine in the Firefighters II case, under which the rules might be validated, is "other personnel matters and transactions." However, when this phrase is read in the context of the article, it is clear that the language was added to allow the Commission some flexibility in rulemaking with respect to administration of personnel. This phrase pertains to personnel management rather than to the jurisdiction of the Commission. We find nothing in Section 10 which could serve as an authorization for the Commission to expand its jurisdiction. Therefore, under the first step in our analysis these rules are unsupportable.
Thus, we must now consider whether it is necessary for the commission to have the power to enact the rules in question to effectuate the objectives and purposes of the civil service. The civil service provisions in the constitution are "designed to protect public career employees from political discrimination by eliminating the "spoils" system. La. Const. art. X, § 1, et seq.; Sanders v. Department of Health & Human Resources, 388 So.2d 768 (La.1980). "Essentially, civil service laws and rules establish a system under which "non-policy forming" public employees are selected on the basis of merit and can be discharged only for insubordination, incompetency, or improper conduct, and not for religious or political reasons." Bannister v. Department of Streets, 95-0404, p. 5 (La.1/16/96) 666 So.2d 641, 645, (citing New Orleans Firefighters Ass'n. v. Civil Service Com'n. of the City of New Orleans, 422 So.2d 402 (La. 1982)).
It is unnecessary for the Commission to have the power to enact rules expanding its jurisdiction in order to achieve the goals and principal objectives of the civil service. Appellate rights are in fact unrelated to the selection and promotion of public employees on the basis of merit, qualifications, or even the protection of employees from unwarranted discrimination. The constitution itself has provided ample protection against discrimination to civil service employees, not only with the explicit protections provided by Article X, Section 8(B), but also with the protection from similar discrimination with Section 10(A)(3), and with the bill of rights. Thus, it is unnecessary for the Commission to have the power to enact the rules in question, which expand its jurisdiction beyond constitutional limits, in order for the Commission to achieve the goals and principal objectives of the civil service. Therefore, Commission Rule 13.10 subsection (c) coupled with Rule 14.1, subsections (e), (f), and (l), and subsection (h) coupled with Rule 1.14.1, to the extent that they purport to authorize appeals to the Commission on discrimination claims outside the scope of the Commission's limited *1263 jurisdiction defined in Article X, Section 8 and 12, are unconstitutional.
The Rules expanding the Commission's own quasi-judicial power are also in conflict with another article of the constitution. Article II, Section 2, which provides for the separation of powers doctrine, prohibits any branch of government or representative thereof to exercise the powers belonging to another. "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. Art. II, Section 2. The Judiciary Article, Section 16, establishes the jurisdiction of the district courts:
(A) Original Jurisdiction. Except as otherwise authorized by this constitution, a district court shall have original jurisdiction of all civil and criminal matters. It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property; the right to office or other public position; civil or political rights; probate and succession matters; the state, a political corporation, or political subdivisions, or a succession, as a defendant; and the appointment of receivers or liquidators for corporations or partnerships.
La. Const. Art. V, Section 16.
Article V, Section 16 makes it evident that the district courts retain jurisdiction to adjudicate all legal matters, both civil and criminal, with the exception of those matters in which original jurisdiction is "otherwise authorized" by the constitution itself in other adjudicate tribunals. The Commission has, by rule, reached beyond its own jurisdiction and attempted to exercise the powers assigned by the constitution to the judiciary branch. And for this reason, as well as the reasons set forth above, we find that the rules expanding the Commission's quasi-judicial power beyond constitutional limits are unconstitutional.

The Jurisdiction of District Courts over Section 10(A)(3) Claims
We must address the jurisdiction of the district courts over Section 10(A)(3) claims because the court of appeal erroneously stated that Section 8(B) could not provide the exclusive bases for discrimination claims within the Commission's jurisdiction as "then an individual would have no recourse to the Commission for discrimination proscribed by Section 10(A)(3)." Louisiana Dept. of Agriculture and Forestry v. Sumrall, 97-0288 p. 6, 712 So.2d at 680. Further, since the Commission has "exclusive jurisdiction over classified employer/employee disputes that are employment related," the court reasoned that "the district courts would be precluded from entertaining the Article 10 discrimination claims, and the employee would have no recourse." Id. (emphasis added).
Article X, Section 10(A)(3), prohibits the Commission or any state agency, department, or political subdivision from creating a rule, regulation or practice which favors or discriminates against an applicant or employee on the basis of his membership or nonmembership in any private organization. That prohibition, which is found within Section 10, pertaining to the rulemaking or quasi-legislative power of the Commission, provides in pertinent part:
(3) Layoffs; Preference Employees.... No rule, regulation, or practice of the commission, of any agency or department, or of any official of the state or any political subdivision shall favor or discriminate against any applicant or employee because of his membership or non-membership in any private organization; ...
This subsection is purely prohibitory, in that it includes no provisions for asserting a claim under its restrictions. Sections 8 and 12 are not referenced therein nor is there any indication that claims made under this provision were intended to be included in the Commission's jurisdiction. Additionally, had the delegates intended this provision to broaden the list of discrimination claims appealable to the Commission, they would have included the prohibition in Section 8, rather than in Section 10. In the constitutional debates of 1973, Delegate Jenkens, who authored the provision, offered the language as an amendment to Section 8 so that it would be included in the list of prohibited discrimination *1264 and be appealable to the Commission. His recommendation however was rejected by a 47-53 vote. Records of the Constitutional Convention of 1973: Convention Transcripts, Volume IX, p. 2706 (December 12, 1973). The delegates voted 57-50 to place this prohibition instead within Section 10. Id. at p. 2719. Considering the substance of the provision and its placement, it is obvious that this provision serves as a limit on the Commission's quasi-legislative powers. Because the provision targets the Commission and specifically prohibits it from discriminating, by rule or practice, on the basis of membership or nonmembership in a private organization, it seems logical that the delegates would not give jurisdiction over such claims to the potential defendant, the Commission.
Rather, the constitution places within the Commission's quasi-judicial power two categories of claims: (1) discrimination claims provided for in Section 8(B); and (2) removal or disciplinary claims provided for in Sections 12(A) and 8(A). We have already held the rules enacted by the Commission purporting to expand its appellate jurisdiction unconstitutional, and that includes the rule authorizing an appeal on claims of discrimination due to membership or nonmembership in a private organization. Thus, the Commission does not have the power, either under the constitutional provisions or under their own rules, to entertain the pure 10(A)(3) claim, (unless the plaintiff is asserting that the discrimination was the basis for his removal or discipline under Section 12). Hence, we must look elsewhere for the Article X, Section 10(A)(3) plaintiff's forum.
As we stated above, district courts have jurisdiction over all civil claims not otherwise provided for in the constitution. Article X, Section 10(A)(3) claims are not included by the constitution in the Commission's jurisdiction. Thus, Article V, Section 16(A), providing that district courts "shall have original jurisdiction of all civil and criminal matters," makes it clear that this plaintiff will bring his claim of discrimination based upon membership or non-membership in a private organization to the district court.
In sum, any classified employee asserting a discrimination claim based upon political or religious beliefs, race or sex, may bring their case to the Commission. Any individual asserting a cause of action based upon a form of discrimination not within the scope of the Commission's quasi-judicial power expressed in Article X, Sections 8 and 12, may not bring his claim to the Commission but has recourse in the district courts. Other laws, state statutes, and provisions of the constitution create assertable individual rights to be free from many forms of discrimination. Plaintiffs seeking protection under any of these laws may take refuge in the district courts of this state.

Decree
For the foregoing reasons, we find Commission Rule 13.10 subsection (c) coupled with Rule 14.1, subsections (e), (f), and (l), and subsection (h) coupled with Rule 1.14.1, to the extent that they purport to authorize appeals to the Commission on discrimination claims outside the scope of the Commission's limited jurisdiction as herein defined under Article X, Sections 8 and 12, are unconstitutional. The judgments of the court of appeal and the trial court are hereby reversed.
REVERSED AND RENDERED.
LEMMON, J., Subscribes to the Opinion and Assigns Additional Reasons.
LEMMON, J., Subscribing to the Opinion and Assigning Additional Reasons
The present case is a declaratory judgment action and does not present a specific dispute between a governmental employer and a classified employee. Nevertheless, contrary to the fears expressed by the Commission, this case should not have an extensive effect on the Commission's jurisdiction.
The Commission has original jurisdiction "to hear and decide all removal and disciplinary cases...." La. Const. art. X, § 12. Since most discrimination claims arise in the context of a removal or a discipline case, the Commission will have jurisdiction in such cases to decide the discrimination claim, whatever the grounds. The few remaining discrimination claims (other than those involving removal or discipline) must be filed in *1265 the district courts (unless the Legislature proposes a constitutional amendment to expand the Commission's jurisdiction.) Therefore, notwithstanding the Commission's concerns, any undermining of judicial efficiency and possibility of conflicting decisions on the same or closely related facts caused by the bifurcation of original jurisdiction for discrimination claims should be minimal.
NOTES
[*] Johnson, J. not on panel. See Rule IV, Part 2, Section 3.
[1] The trial court erred in relying on the Payton case for resolution of this issue as the Payton court expressly refused to reach the issue.

DHHR contends Article 10, § 8(B) contains an exclusive listing of what discriminations are proscribed and that Civil Service Rules expanding this listing are ultra vires and unconstitutional. The issue of the constitutionality of the pertinent Civil Service Rules was not raised before the Referee or the Civil Service Commission; it has been raised before us for the first time. Since this issue was not raised before the Referee or the Civil Service Commission, we decline to consider it.
Department of Health & Human Resources v. Payton, 498 So.2d at 189, fn. 1(citing Rule 1-3, Uniform RulesCourts of Appeal).